UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-80146-CIV-LEIBOWITZ

TOLL SOUTHEAST LP COMPANY, INC.,
a Delaware corporation,

      Plaintiff,

v.

BOCA RATON EXECUTIVE COUNTRY CLUB
CORP., a Florida corporation,

      Defendant.

_____/

## DECLARATION OF ALAN KUTNER IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS

Alan Kutner states as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

The statements made in this declaration are true and correct, and I have personal knowledge concerning the statements made herein.

1.     I am the husband of Adrienne Kutner who has an approximate 20% share in the Boca Raton Executive Country Club Corp. (hereinafter "BRECC"). I have an ownership share in BRECC and it is approximately 1%. Along with Mrs. Kutner's sister (Judi Broad who also owns an approximate 20% share in BRECC) and brother-in-law (Kenneth Packar, surviving spouse of sister Sharlane Packar, who recently passed who also owns an approximate 20% share, those individuals (myself and our children and the children of Judi and Kenneth who own much smaller shares) are the majority shareholders of BRECC (hereinafter "the family" or the "majority shareholders").

2.     The only asset BRECC has (and the only asset it has ever had or will ever have) is a 55-acre parcel of land in east Boca Raton, Florida that used to be a golf course, pro shop, driving range, and ballroom until approximately 13 years ago.

3.     I am active with Mrs. Kutner in BRECC and attend many of the meetings and have been involved in establishing the parameters and terms for the sale of the land. I have also been the financial support behind BRECC along with Mrs. Kutner. For example, when BRECC was sued by a developer Mrs. Kutner and I paid for the litigation. *TLH 40 Boca CC, LLC. v. Boca Raton Executive Country Club Corp.*, 2021 WL 4098192 (Fla. Cir. Ct.). As set forth in more detail below, Mrs. Kutner and I have paid the taxes on the land over the last several years, and all other expenses which include, but are not limited to, removing illegally dumped furniture, periodic mowing of the land, drainage issues, water utility bills,

mosquito/pond issues, trimming of vegetation, fencing, and many other such expenses. As set forth below, Mrs. Kutner and I were not supposed to pay these expenses.

4.      In December 2023 and January 2024, BRECC was attempting to sell the 55 acres. It had just ended the negotiation with a nationwide provider of adult housing, after which negotiations with Plaintiff commenced. BRECC made sure that Ms. Kotler would not be involved in having any communication with a potential buyer in terms of providing any specifics, including any financial numbers or other terms. Thus, as with the adult housing potential buyer, BRECC exclusively utilized attorneys' to handle the negotiation and BRECC gave authority to the attorneys to so negotiate no one else, including Ms. Kotler. While Ms. Kotler at one time was president of BRECC, she never had actual authority to negotiate or renegotiate any sale of the land on its behalf nor did BRECC somehow give her apparent authority to negotiate or renegotiate any sale of BRECC's one asset. Thus, when BRECC and Plaintiff negotiated the sale at $66,000,000, Ms. Kotler was not informed of the amount of the sale, until after there was an agreement on that amount. Plaintiff was told repeatedly by BRECC that the only individuals who had authority to negotiate on BRECC's behalf were the attorneys' and that Ms. Kotler had no authority at all. However, it was clarified that the family had given Ms. Kotler the authority to sign the actual contract—not to agree to its terms but merely to delegate to her the ministerial task of signing it (after the family approved the terms and the contract was ready for signature), and the family gave Ms. Kotler the same ministerial authority to sign the First Amendment to the Agreement. The signing of the Agreement (and the First Amendment) was handled through the attorneys, upon consultation with the family. Ms. Kotler, therefore, did not approve or have any say over the terms of the First Amendment or the original Agreement. In March 2024, there was a lengthy call with Linsday Parsons where Ms. Parsons was told to solely discuss any issues with the land or any further negotiation with the same attorneys with whom she had been negotiating. During that call, Ms. Parsons was informed of the percentage ownership in BRECC that Ms. Kotler owned and it was disclosed to Ms. Parsons who the other family members were who made up the majority. Ms. Parsons and Toll Brothers Vice President at the time, Alex Martin, and general counsel confirmed this in writing on multiple occasions by e-mail which were attached to the letters referenced herein. Ms. Kotler and elderly lady acts and looks unprofessional and no one in their right mind after having spent a few minutes with her would think that she had authority to make million dollar land decisions.

5.      Unfortunately, the Plaintiff began to materially breach the Agreement. For example, Plaintiff was obligated to put $600,000 in escrow on or before February 13, 2024, but once Plaintiff deposited the $600,000 in escrow, it did not timely disburse the initial $25,000 which the Agreement stated was to be disbursed to BRECC on the Effective Date (which was February 8, 2024—see [D.E. 1-

2

3 at p.4 ¶ a).  At some point, the disbursement of the $75,000 was delayed until April 10, 2024, however, *to date, Plaintiff has never disbursed the $75,000.00.*  After Plaintiff untimely disbursed the $25,000 (after repeated letters and emails), Plaintiff refused to disburse from escrow the next payment of $75,000 that was due to be released under the Agreement 15 days after the Effective Date which was February 23, 2024 [D.E. 1-3 at p.4 ¶ a].  (*See Letter from BRECC to Plaintiff*, dated Oct. 1, 2024, attached hereto as Exhibit 1).  Plaintiff also refused to deposit the additional deposit into escrow of $1,400,000 and failed to disburse the periodic 90-day payments of $125,000 which were due; these material breaches were all described in a letter to Plaintiff:

> It has been over 30 days since BRECC has notified Buyer of the default for failing to release [disburse] the $75,000 to BRECC.  BRECC has been informed that to date the additional deposit of $1,400,000.00 has not been deposited to escrow. Buyer is thus continuing to default and be in material breach of the agreement.  The only effective agreement binding on BRECC is the First Amendment and the extension letters for the release of the $75,000 (extended to April 15).  For these reasons, at this time BRECC, as we have informed you, intends to sue Buyer for default, and is in the process of drafting that suit.  We are shocked and appalled that a publicly-traded company would engage in such misconduct and shenanigans.

> Despite all of the above and being on notice of same, Toll Brothers again contacted Ms. Kotler *ex parte* knowing she is not authorized whatsoever and clearly not mentally competent to enter any contract, our office just received a 5th Amendment to the Agreement. BRECC is also not bound by the 5th Amendment.

> Furthermore, the initial agreement provided that the parties had an opportunity to seek the advice of counsel and buyers continued *ex parte* communications continue to breach that provision as well.

> Please be advised that this is Sellers' 30-day notice of default for failing to make payment of the $1,400,000.00 to the escrow account.  As you know, 30 days have since passed that BRECC provided notice of Buyers default regarding the failure of Buyer to disburse the $75,000 from escrow for BRECC to pay property maintenance and taxes as provided for in the contract. Buyer's release of the initial deposit of $25,000 and the letters requesting extensions of time for the $75,000.00 already deposited to be disbursed dispel any assertion by Buyer that the contract did not provide for same. Additionally, Ms. Parsons acknowledged Buyer owed the funds in August 2024 stating she understood and was inquiring as to internal procedures to have the funds released [disbursed to BRECC].

> If we do not hear back from Buyer by end of business today, we will assume it intends on continuing the defaults and breaches on the agreement as set forth above and will proceed with taking action to enforce BRECC's remedies for Buyer's repeated and continuing defaults.

*Id.* at pp. 4-5, attached hereto as Exhibit 2).

3

6.  Meanwhile, unbeknown to the family, Plaintiff's agent Lindsay Parsons started to renegotiate certain material terms of the Agreement (without any consideration flowing to BRECC) with Ms. Kotler directly that represented lowering the purchase price materially (by approximately $20 million with zero consideration), and delaying the end of the inspection period which delayed when the $125,000 90-day payments were due to be disbursed to BRECC, and delayed the subsequent deadlines to submit a formal application to the City of Boca as well as the closing date (15 months from August 2024).  BRECC removed Ms. Kotler, who had never been a director, as president after the Second Amendment was improperly signed by Ms. Kotler in August 2024.  Thereafter, Plaintiff continued to contact Ms. Kotler to materially amend the Agreement, knowing that Ms. Kotler suffers from mental issues (she has been Baker Acted for running around wearing a Wonder Woman outfit in 2023), has been arrested on other matters, is abusing substances, and is unable mentally to negotiate terms concerning the sale of the land.  The "$2^{nd} – 5^{th}$ Amendments'" contain no consideration to BRECC and are not even enforceable.  Anyone speaking to Ms. Kotler for a few minutes or reading her texts, emails, and social media accounts would know that she is not competent to perform any act other than a ministerial one at someone else's direction.  In fact, after Ms. Kotler signed the Fourth Amendment, and our attorneys' disavowed it to BRECC, she thought what she had signed was an offer to negotiate, as she responded by stating "[c]all me so we can counter." (*Email*, Sept. 17, 2024).  Obviously, there is nothing to counter, as it was a unilateral price reduction and delay on when the inspection period would end.

7.  BRECC again put Plaintiff on notice that Plaintiff was in material breach, as follows:

> It has been over 30 days since BRECC has notified Buyer of the default for failing to release the $75,000 to BRECC (which default under the circumstances is unconscionable).  BRECC reached out to the escrow agent a couple weeks ago and was informed that to date the additional deposit of $1,400,000.00 has not been deposited to escrow.  Buyer is thus continuing to default and engage in material breaches of the Agreement.  The only effective Agreement binding on BRECC is the original Agreement and First Amendment and the extension letters for the release of the $75,000 (extended to April 10).
>
> The inspection period expired on August 20, 2024 pursuant to the Authorized Agreement.  As such, Buyer continues to be in default of the Authorized Agreement and the required notice period has expired without Buyer curing same.

(*See Letter from BRECC to Plaintiff*, dated Nov. 2, 2024, attached hereto as Exhibit 2).  The Court should look on page [D.E. 1-3 at p.4 ¶ a.f.] and it will see that $125,000 payments are due every 90 days starting with the end of the inspection period which was months ago.  Plaintiff has not disbursed any of these $125,000 payments.

4

8.      Due to Plaintiff's breach as set forth above, BRECC sent a Notice of Termination of the Agreement on November 2, 2024 pursuant to the terms of the Agreement.  (*See* Termination Notice dated November 2, 2024 attached hereto as Exhibit 3).  After sending the Notice of Termination, BRECC attempted to pursue its remedy under the Agreement to obtain the funds in escrow from the escrow agent; however, Plaintiff subsequently disputed the release of those funds and months later brought this lawsuit despite the fact that Plaintiff is the only party to the Agreement that breached it.  Due to Plaintiff's dispute of the escrow release, the escrow agent has not disbursed the funds to BRECC (either the $75,000 or the first couple $125,000 90-day payments which are past due).  Not only has Plaintiff breached the Agreement and stopped the escrow agent from releasing the funds BRECC is entitled to as its only remedy under the Agreement, but now has filed a lis pendens on the property causing title to not be marketable and obstructing BRECC's ability to entertain other sale opportunities which is essentially slandering BRECC's title to the land it owns.

9.      Meanwhile, Mrs. Kutner and I have had to pay the taxes on the land which exceed $70,000 for each of the years 2023 and 2024, and have had to pay thousands of additional dollars for maintenance expenses which are what the monies in escrow Plaintiff refuses to disburse were intended to cover.  As such, Plaintiff is in material breach of monetary terms of the Agreement, and the First Amendment, and even if the Plaintiff prevails and the Fifth Amendment is found to be enforceable (which it is not), Plaintiff is in breach of the Fifth Amendment, because it still had to disburse the $75,000 by a certain date, and that date came and went, and it failed to placed the $1,400,000 in escrow by December 31, 2024, which is when the Fifth Amendment states the end of the inspection period is, as all obligations were tolled until then. [D.E. 1-3 at p.44 ¶ C.2.].  Well, that was more than 2 months ago, and still no disbursement of the $75,000 and still no provision of the $1,400,000 as additional deposit monies into escrow with the closing agent.  It is clear that Plaintiff is intentionally breaching the contract because interest rates have risen considerably since early 2024 when the Agreement was signed and the price range of the intended houses are greatly affected by interest rates--$3,000,000/ea.  A review of the record shows Plaintiff doing nothing but delaying every chance it gets, even when doing so violates the Elder Abuse Law in Florida and constitutes fraud.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED on this 7th day of March 2025, at Bay Harbor Islands, Florida.

*Dr. Alan Kutner*_____
Dr. Alan Kutner

5

# THE KLEPPIN FIRM, P.A.

### Attorneys-at-Law

8751 W. Broward Blvd.
Suite 105
Plantation, Florida 33324

Chris Kleppin                                                                                Tel   (954) 424-1933
Allyson Kisiel                                                                               Fax   (954) 474-7405

October 1, 2024

**Via Email mcare@tollbrothers.com**

Matthew Care, Esq.
Counsel
Toll Southeast LP Company, Inc.

   Re: Hidden Valley Land Purchase Agreement ("Agreement")

Dear Mr. Care,

  This correspondence is for the purpose of providing Seller's response to your letter dated September 23, 2024. We address each issue in turn.

  We understand from your letter that Toll Brothers ("Purchaser") is taking the position that Ms. Rae Lynn Kotler (former President of Boca Raton Executive Country Club Corp., hereinafter "BRECC") had actual and/or apparent authority to execute the "3rd and 4th Amendments to the Agreement." As set forth below, BRECC strongly disagrees, and it was well-known to Toll Brothers that Ms. Kotler had no such authority to bind BRECC.

  Ms. Kotler never had actual authority to enter into negotiations and contracts on behalf of BRECC even when she was President. BRECC's by-laws expressly reserve that authority to the Board of Directors (Ms. Kotler was never a director of BRECC) and majority shareholders. BRECC made this clear to Buyer throughout the entire course of dealings between the parties, which Buyer confirmed in writing on February 217, 2024 and Buyer was again informed that Ms. Kotler did not have such authority during a phone call with Lindsay Parsons in March 2024.

  For example, Mr. Kleppin wrote the following email in January 2024 stating that the "landowners" make the decisions, as follows:

> **From:** Chris Kleppin <chris@kleppinlaw.com>
> **Sent:** Thursday, January 11, 2024 9:59 AM
> **To:** Lindsay Parsons <lparsons@tollbrothers.com>
> **Cc:** Allyson Kisiel <allyson@kleppinlaw.com>
> **Subject:** Boca Raton Executive Country Club

> Ms. Parsons,

Mr. Matthew Care
October 1, 2024
Page 2 of 5

Along with my partner, Allyson Kisiel, *we are the lawyers representing the landowners. We have received your LOI. Please provide a written contract for my clients' review consistent with those terms.*

(*Email*, from Chris Kleppin to Lindsay Parsons, dated Jan. 11, 2024, attached as Exhibit 1). Ms. Parsons knew that the majority of the shareholders (the other family members—the landowners—as Ms. Kotler only had a 20.383025% share of the land) made the decisions and had to approve of any signing authority (regardless of who actually signed), as follows:

> **From:** Lindsay Parsons
> **To:** Allyson Kisiel
> **Subject:** FW: Toll Southeast LP Company, Inc. / Boca Raton Executive Country Club Corp. - Hidden Valley GC
> **Date:** Tuesday, February 27, 2024 1:33:57 PM
> **Attachments:** image001.png
> image002.png
>
> Hi Allyson,
>
> I just wanted to follow up *to see if the family met to discuss pushing the $75,000 deposit payment.*
>
> Thank You,
>
> Lindsay

(*Email*, from Lindsay Parsons to Allyson Kisiel, dated Feb. 27, 2024, attached as Exhibit 2) (emphasis added).

Furthermore, after Buyer improperly reached out to Ms. Kotler *ex parte* in the beginning of August 2024 and secretly obtained her signature on the 2nd Amendment, the Board of Directors removed her from the office of President (because BRECC by that point did not trust Buyer—which was in material breach/default of the contract by failing to release the $75,000 in escrow to BRECC—or Kotler). (*See Sunbiz Printout*, attached hereto as Exhibit 3).

Immediately upon learning of Buyer's request to amend the contract to extend the inspection period, BRECC's attorney stated that BRECC would agree if Buyer released the $75,000 it owed BRECC from escrow (BRECC's attorney notified Buyer multiple times it was in default for not releasing the funds when they were first due in April 2024). BRECC's firm position was (and is) that the second amendment signed by Ms. Kotler with no authority is also not binding on BRECC.

Mr. Matthew Care
October 1, 2024
Page 3 of 5

Ms. Kotler did not have apparent authority to enter the 2nd, 3rd, and 4th amendments to the Agreement. BRECC never made the representation to Buyer that Ms. Kotler had such authority. The reliance of a third party on the apparent authority of a principal's agent must be reasonable and rest in the actions of or appearances created by the principal, *Lensa v. Poinciana Gardens Ass'n*, 765 So.2d 296, 298 (Fla. 4th DCA 2000); *see also Rushing v. Garrett*, 375 So.2d 903, 906 (Fla. 1st DCA 1979), and "not by agents who often ingeniously create an appearance of authority by their own acts." *Taco Bell of California v. Zappone*, 324 So.2d 121, 124 (Fla. 2d DCA 1975). Remember, in the March 2024 phone call with Ms. Parsons, Mr. Kleppin and I reaffirmed that Ms. Kotler was a minority shareholder in the land and that the majority of the shareholders make the decisions concerning all material terms of the contract and whether they will be enforced.

All of the discussions and negotiations between the parties were dealt with in the same manner—BRECC made clear from the beginning before entering the initial contract that the majority shareholders had to consent to any agreements between the parties and any amendments thereto. Ms. Kotler's authority was limited to signing for the corporation after the corporation had an opportunity to discuss and majority shareholders made a decision. Buyer knew this and acknowledged this throughout. See attached emails reflecting same.

In addition to having neither actual nor apparent authority, Ms. Kotler lacked the mental capacity to enter into the 2nd, 3rd, and 4th amendments to contract because she was unable to comprehend the effect and nature of the transaction. She has indicated to Mr. Kleppin and I that she felt she was merely signing a document that stated that a renegotiation of the contract price would commence and urged the majority shareholders to provide a "counteroffer". It is extremely disappointing that Ms. Parsons (who never before signed any agreement or amendments/extension letters), would secretly speak with Ms. Kotler and goad her into signing the second amendment which Ms. Kotler had no authority nor mental capacity to consent to. Anyone who spends any appreciable time with Ms. Kotler would know she has diminished mental capacity. Ms. Parsons went as far as to cross out Mr. Carter's name as signor for Buyer on a Saturday. Buyer did not even inform BRECC's attorneys of this which is completely unethical knowing BRECC was represented by the Kleppin Law Firm.

On yet another occasion, this time on September 13, 2024, Ms. Parsons sought to obtain another extension of the inspection period by secretly having phone conversations and meeting Ms. Kotler without the knowledge of BRECC and its attorneys. Buyer violated the notice provisions as set forth in the initial agreement when Ms. Parsons sent Ms. Kotler a proposed amendment on September 13, 2024 without copying Mr. Kleppin or myself. Ms. Parson's email addressed to "Chris and Allyson" on September 16, 2024 contained draft word documents—a 3rd amendment extending the due diligence to September 24, 2024 for the stated purpose of giving the parties "time for further discussions" regarding the "proposed adjustments" of the 4th amendment. The 4th amendment extends the due diligence to October 1st with the explanation by Ms. Parsons that the 4th amendment could be signed if the 3rd amendment for additional time to discuss was unnecessary and BRECC was ready to proceed. Ms. Parsons then asked Mr. Kleppin and I to let her know how we "would like to move forward or if any additional clarification is

Mr. Matthew Care
October 1, 2024
Page 4 of 5

needed." That email was sent by Ms. Parsons at 12:57 p.m.—neither Mr. Kleppin nor I even saw the email until many hours later.

Your letter states Buyer received executed 3rd and 4th Amendments from Ms. Kotler a mere 25 minutes later at 1:22 p.m. Ms. Kotler had no authority to execute those amendments. It was not until 7:39 p.m. that Mr. Carter signed via DocuSign the 3rd Amendment and Ms. Parsons sent to counsel minutes later. Upon reading the proposed 4th Amendment and sharing it with the majority shareholders, who unanimously rejected it, did Mr. Kleppin write back and inform Buyer that the proposed 4th Amendment was rejected. It was not until many hours after Mr. Kleppin rejected the 4th Amendment on behalf of a majority of the shareholders that Ms. Parsons sent the 4th Amendment back with Mr. Carter's handwritten signature (so we could not see the actual timestamp of his signature).

The reason Ms. Parsons addressed the email to Mr. Kleppin and I to review and discuss with our clients is because she knew that Ms. Kotler had no authority and that the majority shareholders would need to be informed by counsel and make a decision. See emails from Ms. Parsons acknowledging same attached hereto.

It has been over 30 days since BRECC has notified Buyer of the default for failing to release the $75,000 to BRECC. BRECC has been informed that to date the additional deposit of $1,400,000.00 has not been deposited to escrow. Buyer is thus continuing to default and be in material breach of the agreement. The only effective agreement binding on BRECC is the First Amendment and the extension letters for the release of the $75,000 (extended to April 15). For these reasons, at this time BRECC, as we have informed you, intends to sue Buyer for default, and is in the process of drafting that suit. We are shocked and appalled that a publicly-traded company would engage in such misconduct and shenanigans.

Despite all of the above and being on notice of same, Toll Brothers again contacted Ms. Kotler *ex parte* knowing she is not authorized whatsoever and clearly not mentally competent to enter any contract, our office just received a 5th Amendment to the Agreement. BRECC is also not bound by the 5th Amendment.

Furthermore, the initial agreement provided that the parties had an opportunity to seek the advice of counsel and buyers continued *ex parte* communications continue to breach that provision as well.

Please be advised that this is Sellers' 30-day notice of default for failing to make payment of the $1,400,000.00 to the escrow account. As you know, 30 days have since passed that BRECC provided notice of Buyers default regarding the failure of Buyer to disburse the $75,000 from escrow for BRECC to pay property maintenance and taxes as provided for in the contract. Buyer's release of the initial deposit of $25,000 and the letters requesting extensions of time for the $75,000.00 already deposited to be disbursed dispel any assertion by Buyer that the contract did not provide for same. Additionally, Ms. Parsons acknowledged Buyer owed the funds in

Mr. Matthew Care
October 1, 2024
Page 5 of 5

August 2024 stating she understood and was inquiring as to internal procedures to have the funds released. *See attached.*

If we do not hear back from Buyer by end of business today, we will assume it intends on continuing the defaults and breaches on the agreement as set forth above and will proceed with taking action to enforce BRECC's remedies for Buyer's repeated and continuing defaults.

Very truly yours,

*Allyson Kisiel*

Allyson Kisiel

| From: | Chris Kleppin |
|---|---|
| To: | lparsons@tollbrothers.com |
| Cc: | Allyson Kisiel |
| Subject: | Boca Raton Executive Country Club |
| Date: | Thursday, January 11, 2024 9:58:40 AM |

Ms. Parsons,

Along with my partner, Allyson Kisiel, we are the lawyers representing the landowners.  We have received your LOI.  Please provide a written contract for my clients' review consistent with those terms.  However, make the contract price for $66,000,000.00 and make the upfront nonrefundable monies be $100,000 (the rest of the various payments and what is tied to them are likely acceptable).  You may want to provide same today, because the demand for this land is insane.

Very truly yours,

Chris Kleppin, Esquire
The Kleppin Law Firm
8751 W. Broward Boulevard, Suite 105
Plantation, FL  33324
(954) 424-1933 (office)
(954) 424-7022 (direct)
(954) 474-7405 (fax)
E-mail: chris@kleppinlaw.com

**This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein or entity named above and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited.  If you have received this e-mail in error, please immediately notify us and permanently delete the original and any copy of any e-mail and any printout thereof.  Thank you.**

| | |
|---|---|
| **From:** | Lindsay Parsons |
| **To:** | Allyson Kisiel |
| **Subject:** | FW: Toll Southeast LP Company, Inc. / Boca Raton Executive Country Club Corp. - Hidden Valley GC |
| **Date:** | Tuesday, February 27, 2024 1:33:57 PM |
| **Attachments:** | image001.png |
| | image002.png |

Hi Allyson,

I just wanted to follow up to see if the family met to discuss pushing the $75,000 deposit payment.

Thank You,


Lindsay


**Lindsay Hillstrom Parsons**
**Vice President of Land Acquisition, FLE Division**
Toll Brothers
951 Broken Sound Parkway NW, Suite 180, Boca Raton, FL 334487
Office: (561) 999-1877
Celll: (954) 263-2316



**Toll Brothers**

#1 HOME BUILDER

**FORTUNE WORLD'S MOST
ADMIRED COMPANIES
2022**

©2022 FORTUNE Media IP Limited. Used under license.


**From:** Allyson Kisiel <allyson@kleppinlaw.com>
**Sent:** Friday, February 23, 2024 6:47 PM
**To:** Tom Smith <tsmith@tollbrothers.com>
**Cc:** Courtney Hughes <chughes@tollbrothers.com>; Tom Murray <TMURRAY@tollbrothers.com>; Alex Martin <amartin@tollbrothers.com>; Lindsay Parsons <lparsons@tollbrothers.com>; Chris Kleppin <chris@kleppinlaw.com>
**Subject:** Toll Southeast LP Company, Inc. / Boca Raton Executive Country Club Corp. - Hidden Valley GC

Tom,

Please see the attached letter executed by our client as requested. Please make sure to include me on any and all future correspondence regarding this matter. Thank you and have a great weekend.

Sincerely,

*Allyson Kisiel*

Allyson Kisiel, Esq.
**The Kleppin Law Firm, P.A.**
8751 W. Broward Boulevard | Suite 105
Plantation| FL  33324
(954) 424-0948 (direct)
(954) 424-1933 (office)
(954) 474-7405 (fax)
Email: allyson@kleppinlaw.com

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein or entity named above and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited.  If you have received this e-mail in error, please immediately notify us and permanently delete the original and any copy of any e-mail and any printout thereof.  Thank you.

10/1/24, 3:57 PM                                                    Detail by Entity Name

DIVISION OF CORPORATIONS



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

## Detail by Entity Name

Florida Profit Corporation
BOCA RATON EXECUTIVE COUNTRY CLUB CORP.

**Filing Information**

| | |
|---|---|
| **Document Number** | M98549 |
| **FEI/EIN Number** | 65-0092167 |
| **Date Filed** | 09/14/1988 |
| **State** | FL |
| **Status** | ACTIVE |
| **Last Event** | AMENDMENT |
| **Event Date Filed** | 03/07/1997 |
| **Event Effective Date** | NONE |

**Principal Address**

7601 EAST COUNTRY CLUB BLVD.
BOCA RATON, FL 33487

Changed: 01/13/2018

**Mailing Address**

10001 E. Broadview Dr.
Bay Harbor Islands, FL 33154

Changed: 09/25/2024

**Registered Agent Name & Address**

The Kleppin Firm, P.A.
8751 W. Broward Blvd., Suite 105
PLANTATION, FL 33324

Name Changed: 09/25/2024

Address Changed: 09/25/2024

**Officer/Director Detail**
**Name & Address**

Title P

Kutner, Adrienne
10001 E. Broadview Dr.
Bay Harbor Islands, FL 33154

### Annual Reports

| Report Year | Filed Date |
|---|---|
| 2024 | 04/03/2024 |
| 2024 | 07/15/2024 |
| 2024 | 09/25/2024 |

### Document Images

| | |
|---|---|
| 09/25/2024 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 07/15/2024 -- AMENDED ANNUAL REPORT | View image in PDF format |
| 04/03/2024 -- ANNUAL REPORT | View image in PDF format |
| 02/03/2023 -- ANNUAL REPORT | View image in PDF format |
| 02/17/2022 -- ANNUAL REPORT | View image in PDF format |
| 01/11/2021 -- ANNUAL REPORT | View image in PDF format |
| 02/06/2020 -- ANNUAL REPORT | View image in PDF format |
| 04/01/2019 -- ANNUAL REPORT | View image in PDF format |
| 01/13/2018 -- ANNUAL REPORT | View image in PDF format |
| 01/10/2017 -- ANNUAL REPORT | View image in PDF format |
| 01/27/2016 -- ANNUAL REPORT | View image in PDF format |
| 01/14/2015 -- ANNUAL REPORT | View image in PDF format |
| 01/10/2014 -- ANNUAL REPORT | View image in PDF format |
| 01/25/2013 -- ANNUAL REPORT | View image in PDF format |
| 01/05/2012 -- ANNUAL REPORT | View image in PDF format |
| 02/16/2011 -- ANNUAL REPORT | View image in PDF format |
| 01/07/2010 -- ANNUAL REPORT | View image in PDF format |
| 01/16/2009 -- ANNUAL REPORT | View image in PDF format |
| 01/15/2008 -- ANNUAL REPORT | View image in PDF format |
| 07/17/2007 -- ANNUAL REPORT | View image in PDF format |
| 02/13/2006 -- ANNUAL REPORT | View image in PDF format |
| 03/30/2005 -- ANNUAL REPORT | View image in PDF format |
| 07/08/2004 -- ANNUAL REPORT | View image in PDF format |
| 01/13/2003 -- ANNUAL REPORT | View image in PDF format |
| 02/19/2002 -- ANNUAL REPORT | View image in PDF format |
| 05/07/2001 -- ANNUAL REPORT | View image in PDF format |
| 03/02/2000 -- ANNUAL REPORT | View image in PDF format |
| 03/02/1999 -- ANNUAL REPORT | View image in PDF format |
| 02/09/1998 -- ANNUAL REPORT | View image in PDF format |
| 03/07/1997 -- AMENDMENT | View image in PDF format |
| 02/26/1997 -- ANNUAL REPORT | View image in PDF format |
| 02/05/1996 -- ANNUAL REPORT | View image in PDF format |
| 01/25/1995 -- ANNUAL REPORT | View image in PDF format |

Florida Department of State, Division of Corporations

# THE KLEPPIN FIRM, P.A.

Attorneys-at-Law

8751 W. Broward Blvd.
Suite 105
Plantation, Florida 33324

Chris Kleppin                                                    Tel   (954) 424-1933
Allyson Kisiel                                                   Fax   (954) 474-7405

November 2, 2024

**Via Email mcare@tollbrothers.com**

Matthew Care, Esq.
Counsel
Toll Southeast LP Company, Inc.

      Re:     Hidden Valley Land Purchase Agreement ("Agreement")

Dear Mr. Care,

This correspondence is for the purpose of providing Seller's response to your letter dated October 31, 2024 addressed to Mr. Kleppin. We address each issue in turn.

In your first paragraph, you state that you "note that Seller never responded to Toll's communications regarding the 5th Amendment. Therefore, Seller has waived any objection to the same." You need to re-read my letter dated October 1, 2024. Therein, I plainly stated that Buyer knew BRECC had *not* given any minority shareholder (*e.g.*, Ms. Kotler) authority to enter into any amendment or Agreement modification without approval of the majority of BRECC's shareholders, and thus the 2nd, 3rd, 4th, and 5th amendments were void (not binding on BRECC). That you would suggest the 2nd, 3rd, and 4th Amendments are of no effect but the 5th Amendment is effectual is absurd. Thus, BRECC directly responded to the Buyer's letter of September 30, 2024 repudiating Buyer's contention that the 5th Amendment had any effect. This notion is stated more than once in that letter and reiterated herein. Plainly stated, the majority of BRECC's shareholders decide whether the Agreement was to be signed and whether any amendment would be agreed to.

The fact you repeat this ridiculous claim in the second paragraph of your letter does not somehow strengthen Buyer's position through repetition but merely highlights Buyer's feeble explanation for fraudulently obtaining Ms. Kotler's signature and dealing with her (including having lawyers and their agents deal directly with her in violation of Bar rules) while she is represented by counsel (in her capacity as a minority shareholder of BRECC) on the 2nd – 5th Amendments. Reread the October 1, 2024 letter that mentions the 5th Amendment and states it has no effect because it was signed by someone (Ms. Kotler) who had no authority to bind BRECC on her own which Buyer knew. We are appalled a publicly-traded company would act in such a manner—attempting to deal with Ms. Kotler behind the backs of counsel and the

# THE KLEPPIN FIRM, P.A.

## Attorneys-at-Law

8751 W. Broward Blvd.
Suite 105
Plantation, Florida 33324

Chris Kleppin
Allyson Kisiel

Tel  (954) 424-1933
Fax  (954) 474-7405

November 2, 2024

**Via Email:**
Toll Southeast LP Company, Inc.
c/o Toll Bros., Inc.
Attn: Tom Murray, Regional President
2555 SW Grapevine Parkway, Suite 1 00
Grapevine, TX 76051
Telephone: (817) 329-7961
Email: tmurray@tollbrothers.com

Dear Mssrs. Murray, Carter, Smith, and Care:

This letter is for the purpose of setting forth BRECC's position regarding the sale of the property to Buyer.  Please see the letter I wrote to Mr. Care, which is attached hereto as "Exhibit 1". Unfortunately, the required time to cure Buyer's defaults has expired. **Please read or re-read October 1, 2024 letter and notice of default to Buyer from BRECC—it rejects the validity of the 5th Amendment and explicitly states BRECC is not bound by it for the same reasons it is not bound by the 2nd, 3rd, and 4th Amendments to the Agreement** (collectively referred to as the "Unauthorized Amendments"). We hoped Buyer would take the last 30 days after BRECC's notice of Buyer's defaults under the Agreement and 1st Amendment to Agreement (collectively referred to as the "Authorized Agreement"), to attempt to resolve the disputed issues between the parties. Buyer did not make any such attempt, but rather appears to be ramping up for litigation.

It is clear from Mr. Care's October 31, 2024 letter, that Buyer's only desire is to force BRECC to agree to the Unauthorized Amendments. BRECC has repeatedly rejected the Unauthorized Amendments and has repeatedly maintained that BRECC is not bound by the Unauthorized Amendments because Ms. Kotler had no actual or apparent authority to sign them without prior approval of the majority shareholders of BRECC.  Buyer knew Ms. Kotler had no such authority and BRECC never represented otherwise.  In fact, BRECC has consistently represented to Buyer that majority shareholder approval was required before any agreement or amendment was signed by Ms. Kotler.  Ms. Kotler had no actual authority when she was President pursuant to BRECC's bylaws (and had no authority after she was stripped of her presidency in August 2024) and Ms. Kotler had no inherent authority as President of BRECC because the sale of the land, the only asset of BRECC, is not in the course of BRECC's ordinary business. *Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So.2d 296 (Fla. 4th DCA 2000).  BRECC, the principal, never made any

representation, by its actions or appearances, that Ms. Kotler had authority to sign the Unauthorized Amendments, but rather let Buyer know repeatedly that BREC's protocols were to have the majority of shareholders agree on any decision (*e.g.*, whether to sign the original Agreement or any of the proposed Amendments).  Thus, Ms. Kotler had no apparent authority to sign the Unauthorized Amendments. *Id.*

While we understand you and Tom Smith are not members of the Florida Bar Association and are not licensed attorneys in Florida—you are nonetheless required to comply with the standards of ethical and professional conduct set forth in the Rules Regulating the Florida. *Rule 4-5.5 and Comments*. There is no dispute that BRECC has been, and still is, represented by counsel concerning the sale of the property Buyer.  BRECC's counsel has never consented to Buyer's attorneys communicating with BRECC (or any of its representatives or minority shareholders who are the client) directly or indirectly and Buyer cannot otherwise evade the rules prohibiting same by using their client to indirectly violate the Rules of Professional Conduct. *Rule 4-4.2*. Buyer's attorneys, without the required consent, directly and indirectly (by using their client), have communicated with Ms. Kotler, a minority shareholder of BRECC, regarding the sale of the property to Buyer without authorization from BRECC or its lawyers.  Buyer did not even disclose the prohibited communications—BRECC's attorneys and BRECC were made aware through an email chain forwarded to them by Ms. Kotler that included Buyer's unethical conduct and made reference to prior and ongoing surreptitious communications regarding material/massive changes in the agreed sale of the property to Buyer. The Pennsylvania Bar Association likewise prohibits Buyer's attorneys' unethical conduct.  Mr. Care's letter of October 1, 2024 further informed BRECC that Buyer and its attorneys have continued these communications without BRECC or its attorneys' knowledge or consent.  BRECC again demands Buyer to cease engaging in such misconduct.  Furthermore, both Florida and Pennsylvania prohibit Buyer's attorneys from communicating with Ms. Kotler in violation of the aforementioned Rules even if Ms. Kotler initiates or consents to the communication.

In addition to having neither actual nor apparent authority, Ms. Kotler lacked the mental capacity to enter into the 2nd, 3rd, 4th and 5th amendments to contract because she was unable to comprehend the effect and nature of the transactions (a fact Mr. Care chose not to address in his recent letter). Ms. Kotler has indicated to BRECC's counsel that she felt she was merely signing a document that stated that a renegotiation of the contract price would commence and urged the majority shareholders to provide a "counteroffer".  It is extremely disappointing that Buyer would secretly speak with Ms. Kotler and goad her into signing the 2nd, 3rd, 4th, and 5th amendments which Ms. Kotler had no authority nor mental capacity to consent to.  Anyone who spends any appreciable time with Ms. Kotler would know she has diminished mental capacity.

The fact that Ms. Kotler would sign an amendment significantly reducing the purchase price for zero consideration and against the best interests of BRECC, at a minimum, created the duty under Florida Law to inquire by Buyer with respect to whether she had such authority, see *GolTV, Inc. v. Fox Sports Latin America Ltd.*, 277 F.Supp.3d 1301 (S.D. Fla. 2017), particularly when all previous negotiations were handled through BRECC's lawyers (Mr. Kleppin) after obtaining the consent and direction of a majority of BRECC's shareholders.

It has been over 30 days since BRECC has notified Buyer of the default for failing to release the $75,000 to BRECC (which default under the circumstances is unconscionable). BRECC reached out to the escrow agent a couple weeks ago and was informed that to date the additional deposit of $1,400,000.00 has not been deposited to escrow. Buyer is thus continuing to default and engage in material breaches of the Agreement. The only effective Agreement binding on BRECC is the original Agreement and First Amendment and the extension letters for the release of the $75,000 (extended to April 10).

The inspection period expired on August 20, 2024 pursuant to the Authorized Agreement. As such, Buyer continues to be in default of the Authorized Agreement and the required notice period has expired without Buyer curing same.

Your October 31, 2024 letter concludes with "Agreement is still effective and binding, Seller may not market this property to any other buyer who may have an interest in purchasing the property. Buyer reminds Seller of its pertinent obligations with respect to the encumbrance of the relevant property and Buyer's contractual interest therein." BRECC notes that this "reminder" runs contrary to the Unauthorized Amendments Buyer seeks to have BRECC bound by (*see* Unauthorized Amendment 5th Amendment paragraph (C)(2)). That Buyer would propound such an argument by such clumsiness underscores its desperateness.

Due to the remedy provision in the Authorized Agreement and Buyer's refusal to provide any offer to modify same to BRECC (Buyer has likewise refused to engage in any attempt to peacefully resolve the issues), BRECC hereby terminates the Authorized Agreements and will demand the release of the escrow funds deposited and demands payment of the remaining $1.4 million dollars be paid to BRECC that Buyer has improperly failed to deposit in escrow. BRECC has confirmed with the escrow agent as November 1, 2024, the only funds currently in escrow are in the amount of $575,000.00. BRECC is in receipt of the authorization executed by Buyer permitting the escrow agent to release the deposited funds pursuant the parties' Authorized Agreement as liquidated damages. *See* Feb 8, 2024, Agreement For The Sale And Purchase Of Real Property, Paragraph 4(g).

Very truly yours,

*Allyson Kisiel*

Allyson Kisiel

cc:
Toll Southeast LP Company, Inc.
c/o Toll Bros., Inc.
Attention: Jonathan Carter, Division President
951 Broken Sound Parkway NW, Ste. 180
Boca Raton, Florida, 33487
Phone: (561) 999-1877
Email: jcarter@tollbrothers.com

Toll Southeast LP Company, Inc.
c/o Toll Bros., Inc.
Attention: Thomas J. Smith, III, Vice President and Counsel
1140 Virginia Drive
Fort Washington, PA 19034
Phone: (215) 293-4366
Email: tsmith@tollbrothers.com

Matthew Care
mcare@tollbrothers.com
Litigation Attorney
Toll Brothers
1140 Virginia Drive, Fort Washington, PA 19034

Lindsay Parsons
lparsons@tollbrothers.com

legalnotices@tollbrothers.com

# THE KLEPPIN FIRM, P.A.
## Attorneys-at-Law

8751 W. Broward Blvd.
Suite 105
Plantation, Florida 33324

Chris Kleppin
Allyson Kisiel

Tel   (954) 424-1933
Fax  (954) 474-7405

November 2, 2024

**Via Email mcare@tollbrothers.com**

Matthew Care, Esq.
Counsel
Toll Southeast LP Company, Inc.

> Re:   Hidden Valley Land Purchase Agreement ("Agreement")

Dear Mr. Care,

This correspondence is for the purpose of providing Seller's response to your letter dated October 31, 2024 addressed to Mr. Kleppin. We address each issue in turn.

In your first paragraph, you state that you "note that Seller never responded to Toll's communications regarding the 5th Amendment. Therefore, Seller has waived any objection to the same." You need to re-read my letter dated October 1, 2024. Therein, I plainly stated that Buyer knew BRECC had *not* given any minority shareholder (*e.g.*, Ms. Kotler) authority to enter into any amendment or Agreement modification without approval of the majority of BRECC's shareholders, and thus the 2nd, 3rd, 4th, and 5th amendments were void (not binding on BRECC). That you would suggest the 2nd, 3rd, and 4th Amendments are of no effect but the 5th Amendment is effectual is absurd. Thus, BRECC directly responded to the Buyer's letter of September 30, 2024 repudiating Buyer's contention that the 5th Amendment had any effect. This notion is stated more than once in that letter and reiterated herein. Plainly stated, the majority of BRECC's shareholders decide whether the Agreement was to be signed and whether any amendment would be agreed to.

The fact you repeat this ridiculous claim in the second paragraph of your letter does not somehow strengthen Buyer's position through repetition but merely highlights Buyer's feeble explanation for fraudulently obtaining Ms. Kotler's signature and dealing with her (including having lawyers and their agents deal directly with her in violation of Bar rules) while she is represented by counsel (in her capacity as a minority shareholder of BRECC) on the 2nd – 5th Amendments. Reread the October 1, 2024 letter that mentions the 5th Amendment and states it has no effect because it was signed by someone (Ms. Kotler) who had no authority to bind BRECC on her own which Buyer knew. We are appalled a publicly-traded company would act in such a manner—attempting to deal with Ms. Kotler behind the backs of counsel and the

Mr. Matthew Care
November 2, 2024
Page 2 of 3

majority shareholders in contravention to the established procedures of the parties and the corporate structure of BRECC and its established decision-making protocols.

In ¶ 3, you make the asinine notion that BRECC is taking the position that Ms. Kotler never had the authority to enter into the Agreement and the 1st Amendment, and further state that the Agreement states Ms. Kotler had sole and independent unlimited authority to bind BRECC (the landowner).  Your contentions are wrong.  First, conspicuously absent from your letter is any citation to the Agreement that Ms. Kotler had such authority.  Second, BRECC maintains, as we made clear in our October 1, 2024 letter (please reread it), that Ms. Kotler was given the authority by the majority shareholders to sign the original Agreement and the 1st Amendment— Ms. Kotler was given that authority after and only after the majority shareholders agreed on the language and the terms—Ms. Kotler made no independent determination on behalf of BRECC to sign the Agreement or the 1st Amendment, nor would BRECC ever have given her such authority.  Thus, BRECC did not commit fraud, but Buyer did (as set forth in detail in the October 1, 2024 letter).  BRECC does not intend to "perform its obligations under the Agreement and the subsequent (5 total) amendments" as you mention in ¶ 3 because of Seller's numerous material breaches which extinguishes BRECC's duties to perform under the contract pursuant to Florida law.  For example, what Buyer did with Ms. Kotler is unconscionable and frankly constitutes elder abuse under Florida law, and Buyer has still failed to release the escrow monies.

In ¶ 4, you claim there is no provision to ever release the $75,000 from escrow.  (*Letter* at 1) ("there is no provision in the Agreement that provides for the release of those funds to Seller").  You are wrong.  What on earth would be the reason for Buyer to deposit $75,000 in escrow if such funds could never be released? Buyer's release of the $25,000.00 under the Agreement negates Buyer's attempt have terms interpreted otherwise?  There is a time is of the essence provision so taxes and upkeep/maintenance costs could be satisfied by those funds which has caused significant pain and hardship to BRECC given Buyer's material breach/default in refusal to release those funds.  Apparently, you believe Buyer deposited $600,000 in escrow for absolutely no purpose whatsoever and has no intention of ever releasing any more than $25,000.  That makes no sense.

Because the 2nd, 3rd, 4th, and 5th Amendments are null and void, yes, the $1,400,000 was due to be paid in escrow some time ago, but Buyer refused to deposit it—we confirmed same with the escrow agent.  Thus, Buyer's failure to deposit the $1,400,000 in escrow is yet another material breach by Buyer.

What you do not address is most telling.  The emails that show Buyer knew that BRECC operating procedures and protocols were that it took the "family" (the majority of shareholders) to make decisions concerning the land and that Ms. Kotler had no independent authority and that Ms. Kotler is obviously not of sound mind.  The original Agreement and the 1st Amendment were signed by Ms. Kotler on behalf of BRECC after BRECC's majority shareholders agreed to accept those terms and allowed Ms. Kotler to sign on its behalf (which is a protocol supported by emails and the manner in which the Agreement and 1st Amendment were signed—*through BRECC's counsel*.  BRECC is sorry it has come to this and sorrier still that Buyer would engage

Mr. Matthew Care
November 2, 2024
Page 3 of 3

in such juvenile shenanigans.

Very truly yours,

*Allyson Kisiel*

Allyson Kisiel

## Allyson Kisiel

| | |
|---|---|
| **From:** | Allyson Kisiel <allyson@kleppinlaw.com> |
| **Sent:** | Saturday, November 2, 2024 8:22 PM |
| **To:** | Matthew Care |
| **Cc:** | Chris Kleppin |
| **Subject:** | Hidden Valley Land Purchase Agreement ("Agreement") - Response to Buyer's Letter of October 31, 2024 |
| **Attachments:** | Letter - Response to Buyer's Letter of October 31, 2024 - Final.pdf |

Mr. Care,

Please see attached.

Sincerely,

*Allyson Kisiel*

**Allyson Kisiel**
**The Kleppin Law Firm, P.A.**
8751 W. Broward Boulevard | Suite 105
Plantation| FL 33324
(954) 424-0948 (direct)
(954) 424-1933 (office)
(954) 474-7405 (fax)
Email: allyson@kleppinlaw.com

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein or entity named above and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited.  If you have received this e-mail in error, please immediately notify us and permanently delete the original and any copy of any e-mail and any printout thereof.  Thank you.

# Xerox® AltaLink® C8155 Color MFP
# SMTP Transfer Report



## Job Status:  FAILED

Job failed. No messages were sent. Could not login to the sending mail server (SMTP). Check your user name and password provided or contact your System Administrator.

## Job Information

| | |
|---|---|
| Device Name: | Xerox AltaLink C8155 \(A2:48:0F\) |
| Submission Date: | 03/07/25 |
| Submission Time: | 05:42 PM |
| Images Scanned: | 25 |
| Size: | 0 |
| Attachment Name: | Scanned from a Xerox Multifunction Printer.pdf |
| Format: | Image-Only PDF |
| Encrypted E-mail: | No |

## SMTP Server

| | |
|---|---|
| Address: | secure.emailsrvr.com:587 |

## Message Settings:

| | |
|---|---|
| Subject: | Scanned from a Xerox Multifunction ... |
| From: | donotreply6@gdp360scans.com |
| Reply To: | donotreply6@gdp360scans.com |
| To: | |

1. chris@kleppinlaw.com

©2017-2019 Xerox Corporation. All Rights Reserved.
Xerox® and AltaLink® are trademarks of Xerox Corporation in the United States and/or other countries.